# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

SEP 27 2023

KEVIN F. WEIMER, Clerk

BRIAN JAMES ALBERT, )
)
PLAINTIFF, )
)
v. )
)
LINCOLN BANCORP, )
)
DEFENDANT. )
)
)

CIVIL ACTION NO:

1:23-CV-4409

DEMAND FOR JURY TRIAL

## I. INITIAL COMPLAINT

Brian Albert (Plaintiff), *non-attorney,* files this Complaint against Lincoln Bancorp and subsidiary Lincoln Savings Bank (Defendant) and alleges as follows:

## II. INTRODUCTION

Defendant is a holding company that owns Lincoln Savings Bank. The Plaintiff worked for Defendant as the Bank Secrecy Act (BSA) Officer. The BSA compliance officer was charged with managing all aspects of the BSA/AML (Anti-Money Laundering) compliance programs, including managing the bank's compliance with BSA regulatory requirements. Also, it was Plaintiff responsibility

1

for coordinating and monitoring day-to-day BSA/AML compliance. Additionally, the Plaintiff was expected to advise the Board of Directors, Executive Management, AML Committee of emerging BSA compliance issues and consult and guide the Bank in the establishment of controls to stay in regulatory compliance by mitigating risks[1] (ffiec bsa/aml assessing the bsa/aml compliance program - bsa compliance officer).

The Plaintiff was hired by the Defendant ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Plaintiff, ███████████████████████████████████ began to be harassed by Senior Management. Senior Management then told Plaintiff to ███████████████████████████████████ ███████████████████████████████████ ███████████████████████████████████ ███████████████████:

2

1. Plaintiff informed law enforcement of the Defendant's instructions to lie to law enforcement and additional retaliations to Plaintiff,

2. the Plaintiff was placed on administrative leave, and

3. then Plaintiff was wrongfully terminated.

In an OSHA Office of Administrative Law Judge (OALJ) Order dated September 7, 2023, the OALJ provided Plaintiff the option to move the OALJ case 2022SOX00036 to Federal Court. The OALJ would not provide complainant (Plaintiff) medically necessary ADA accommodations of a court appointed attorney and Respondent (Defendant) refused to provide customary necessary discovery documents. The OALJ case is over 180 days old and does not have a final judgement.

Approximately two years after Plaintiff's termination the Defendant moved the case forward causing additional SOX claims by attempting to ruin Plaintiff's career making a *false claim to the FDIC* to get Plaintiff censured and introducing ACAMs case (1:18-CV-05464-SCJ) document filings into an OSHA investigation and OALJ hearing to interfere with the OSHA employees against the non-attorney Plaintiff. This outside ACAMs case (1:18-CV-05464-SCJ) filings had no relevance to the SOX case. ACAMs case (1:18-CV-05464-SCJ) succeeded in tampering with the federal government's OALJ against the Plaintiff.

3

## III. JURISDICTION AND VENUE

1. This action arises under the laws and Constitution of the United States. This Court has personal jurisdiction over this action, and the parties herein, arises under the employee protection provisions of Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002, Title VIII of the Sarbanes-Oxley Act of 2002, as amended ("SOX"), 18 USC § 1514A, and its implementing regulations found at 29 CFR Part 1980.

2. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in that Plaintiff was a resident in the State of Georgia when Plaintiff was terminated by the Defendant and Defendant continued retaliating and creating new claims after termination.

3. The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1367 as it pertains to Plaintiff's state claims.

4. The case in OSHA has been there for more than 180 days of the filing of the complaint and there is no such delay of bad faith by the Plaintiff, this case is being moved to Federal Court (de novo).

5. In OALJ Order dated September 7, 2023, the option to move the OALJ case 2022SOX00036 to Federal Court was provided to the Plaintiff by the

4

OALJ. The OALJ would not provide ADA accommodations of a court appointed attorney.

## IV. PARTIES

1. Plaintiff, Brian Albert, is a natural person and is a resident in Gordon County, citizen in the State of Georgia and of the United States.

2. LINCOLN BANCORP's Lincoln Savings Bank (Defendant) is a financial intermediary that accepts deposits and channels those deposits into lending activities, either directly or through capital markets. The bank connects customers with capital deficits to customers with capital surpluses. The defendant is incorporated under the laws of Iowa, having its headquarters at 508 Main Street, Reinbeck, IA 50669.

3. At all relevant times, Defendant acted through its duly authorized agents, employees, officers, members, directors and representatives.

## V. Statement of Facts

**18 U.S.C.A. § 1514A(a)** states that:
*....no company may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee—*

This is exactly what the Defendant had done. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, as noted above and immediately retaliated by:

1. the Defendant excluded the Plaintiff from the September 17, 2020, meeting (which the Plaintiff should have been included in because the

5

meeting was BSA related, this is additional retaliation and setting Plaintiff up for failure) ▮▮▮▮ as retaliation and to prevent Plaintiff ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ that enabled the fraud to occur but would generate fee income for Defendant.

2. Mark Webb – Chief Compliance Officer (CCO), met with the Plaintiff on the morning of September 23, 2020, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Mr. Webb stated to the Plaintiff, "*I don't think we should say that, it's not going to look good*, (**Exhibit 2, start at 24:39**), to which the Plaintiff responded, "*but that is what happened*".

6



3. ███

It was clear from Defendant's overt retaliation to the Plaintiff, following the 9/23/20 meeting with Mr. Webb, ███, and bank management reporting *retaliation* and *insider-abuse as dictated in Defendant's Employment Agreement*. This email states clearly and specifically that Plaintiff believed the Plaintiff was retaliated against ███ (Exhibit 1). Plaintiff's email goes on to state that the Plaintiff followed all policies, procedures and tools provided to Plaintiff by the Defendant. This protected activity sparked further retaliation by the Defendant.

Following the receipt of the September 23 email, Defendant's management:

1. blocked the Plaintiff from accessing Plaintiff's work email,
2. prevented Plaintiff ███

7

███████████████████████████████ ███████████████████████████████

███████████████ █████████████

3. That same day, the Plaintiff received a call from Cathy Schuler in Human Resources, informing him that she received a copy of the September 23 email and while they figure out what was going on as a result, Plaintiff was being placed on administrative leave, (Exhibit 1 and 3).

4. Only 3 days later, Ms. Schuler contacted the Plaintiff again, requesting that Plaintiff return his company laptop.

5. The Plaintiff was then terminated on November 6, 2020, never having returned to work.

The Defendant's Senior Management was trying to stop the Defendant's Board of Directors ████████████████████████████████████████

█████████████████████ █████████████████████████

████████████████████ This was the defendant attempting to cover their role in permitting fraud. The LSBX department was responsible ████████

████████████████████████████████████████████ The Board of Directors was responsible for ████████████████████████

████████████████

The Employment Agreement states Plaintiff had to notify the *regulators*

8

*before* the bank and the Code of Ethics policy does not say that Plaintiff ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Exhibit 6).

Plaintiff followed the Defendant's written Employment Agreement which states (Exhibit 5, section 1, paragraph 2) that Plaintiff had to follow all State and Federal Regulatory rules and laws, which would include letting the Defendant know the Plaintiff turned in Defendant for *Insider-abuse* and *whistleblowing retaliation* activity. The Employment Agreement states Plaintiff had to notify the ▮▮▮▮▮▮▮▮▮▮▮▮ and the Code of Ethics policy does not say that Plaintiff could not ▮▮▮▮▮▮▮▮▮▮ (Exhibit 6).

## VI. Defendant's Defenses in OSHA Investigation using Federal Court Filings

The Defendant's only real argument during the OSHA Whistleblower Investigation and with the OALJ hearing was to use multiple Federal Court Case filings ACAMS (1:18-CV-05464-SCJ) (Appellate Court Docket No. 23-10678).

The Defendant's own job description *does not state the ACAM professional designation was a mandatory requirement for the BSA position*. Plaintiff's resume correctly states, plaintiff was a CAMS "member" which *does not mean* Plaintiff held the ACAM designation.

The Plaintiff's supervisor Chief Risk Officer, Mark Webb boasted Webb had *NO* professional banking compliance designations (Emphasis added).

9

It's important to note that the Plaintiff received a call from the Office of Inspector General (OIG) from the Small Business Administration (SBA) - after reading the September 23 email from the Plaintiff (Exhibit 1). The OIG stated that

[redacted]

## IX. CAUSES OF ACTION

Plaintiff repeats and re-alleges the allegations set forth in Paragraphs above and incorporates same herein by reference.

1. The first SOX claim case was filed with OSHA within the appropriate time frame from the Plaintiff's termination.

2. The second SOX claim, that came after Plaintiff's termination and was caused by the Defendant continuing to retaliate against the Plaintiff by ruining Plaintiff's carrier and using the ACAM case (**1:18-CV-05464-SCJ**) as their shield

Claim of retaliation in violation of Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002, Title VIII of the Sarbanes-Oxley Act of 2002, as amended ("SOX"), 18 USC § 1514A.

10

Even if these activities Plaintiff reported to the banking regulators are not ultimately unlawful, the reporting is still protected speech under SOX as long as Plaintiff reasonably believed that the activities were *possible* violations of the law. Thus, thus, the reports the Plaintiff made to the FDIC constitute protected activity under SOX.

Plaintiff also was cooperating in the FDIC and the State of Iowa Division of Banking's investigation of their audit and investigation of ▉▉▉▉▉▉▉▉▉ ▉▉▉▉ with the defendant at the time of my termination which would also be protected under SOX.

### B. Tortuous Interference Business Expectancy

Plaintiff repeats and re-alleges the allegations set forth in Paragraphs above and incorporates same herein by reference.

C. Elements to Tortuous Interference.

1. A person or business not a party to the contract interfered with that contract by wrongful or unlawful conduct;
2. The defendant acted willfully or knowingly;
3. The defendant's intention was to interfere with the contract; and
4. The plaintiff suffered financial losses because of the defendant's conduct.

1. A person or business not a party to the contract interfered with that contract by wrongful or unlawful conduct.

In Exhibits 14 and 11, the defendant lied to the FDIC which *directly caused* Plaintiff to receive a written Censured and threatened by the FDIC with Fines and imprisonment (Emphasis added). The FDIC was told Plaintiff was fired for cause and this hurt the reputation of the plaintiff (Exhibit 8).

11

2. The Defendant acted willfully or knowingly.

The Defendant and Plaintiff were in a sealed OSHA investigation when the Defendant broke the seal and sent a letter or email to the FDIC to get the Plaintiff censured (Exhibit 14). The Defendant used this email censuring the Plaintiff in the OSHA Investigation to harm the Plaintiff. This email was sent approximately a year after the Defendant had terminated the Plaintiff. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ for the cause of my termination (Exhibit 8).

3. The Defendant's intention was to interfere with the contract; and

This was done to ruin the Plaintiff's reputation in the industry with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The Plaintiff could not get a job as a BSA Officer ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to a potential employer. The Plaintiff could be barred from the industry and not permitted to be in any banking compliance department.

4. The Plaintiff suffered financial losses because of the Defendant's conduct.

The Plaintiff has not been able to apply for positions that would pay more and have better benefits due to the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Exhibit 14). This will also cost the Plaintiff more money as the Plaintiff will have to clear his name to get this mess cleared up. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ that it didn't even ask the Plaintiff if the document was considered private by the Defendant or even how the Plaintiff was given a copy. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Exhibit 14).

**Punitive Damages**

Plaintiff repeats and re-alleges the allegations set forth in paragraphs above and incorporates same herein by reference.

Defendants continued to this day, impugned conduct was willful, wanton, oppressive, and demonstrated that entire want of care which raises the presumption of a conscious indifference to consequences. For this reason, Plaintiff avers that

defendant is liable to plaintiff for punitive damages to punish, penalize, and deter defendant from similar conduct in the future.

Respectfully submitted the 25th day of September 2023.

Brian Albert
316 E Line Street Calhoun,
GA 30701
Balbert0440@yahoo.com
7622048410

13